IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
02 MAR 31 PM 11:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| DR. TED D. SPRING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action Number |
| SHELTON STATE COMMUNITY COLLEGE, ) | 00-C-1316-W |
| ALABAMA DEPARTMENT OF POSTSECONDARY ) | |
| EDUCATION; FRED GAINOUS, individually and ) | |
| officially; and TOM E. UMPHREY, individually and ) | |
| officially, ) | |
| ) | |
| Defendants. ) | |

ENTERED
APR 1 2002

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Shelton State Community College (SSCC), Alabama Department of PostSecondary Education ("the Department"), Fred Gainous, and Tom E. Umphrey have moved for summary judgment. For various reasons, the motion is due to be granted. SSCC and the Department are agencies of the State of Alabama, and, as such are entitled to absolute immunity from damages under the Eleventh Amendment of the United States Constitution. Fred Gainous and Tom E. Umphrey, in their official capacities, are likewise entitled to immunity from damages.

Based on the undisputed facts which follow, Gainous and Umphrey are entitled to qualified immunity from liability for violation of Plaintiff's First Amendment rights under 42 U.S.C. §1983.

Plaintiff has adduced no facts showing that any of the Defendants presented a false or

fraudulent claim for payment to the United States Government or its Armed Forces. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim brought under 31 U.S.C. §3729, the False Claims Act.

## A. THE UNDISPUTED FACTS

1. Plaintiff Ted Spring was hired as Vice-President of SSCC in September 1992. He had been interviewed for this position by Defendant Tom Umphrey, President of SSCC, and Defendant Fred Gainous, Chancellor of the Department, among others.

2. At the time he was hired, Plaintiff was charged with handling the day-to-day operations of SSCC, and he was told by Defendant Gainous that he would serve as "the president without the portfolio."

3. In his capacity as Vice-President of SSCC, Plaintiff became aware of illegal, fraudulent, and unethical conduct by Umphrey and other SSCC employees.

4. In July 1995, Plaintiff was subpoenaed to testify before a federal grand jury investigating SSCC and Umphrey. During his grand jury appearance, Plaintiff was alerted to the fact that his name had been typed on three memoranda authorizing the transfers of funds for a program which was the subject of the grand jury investigation. Plaintiff later learned that Umphrey was aware of and had approved of the memos with Plaintiff's typed name, and that the memos had been signed without Plaintiff's authorization. When Plaintiff questioned Umphrey about the memos, Umphrey told him to forget about it because his grand jury appearance was over.

5. Plaintiff began to question Umphrey as Plaintiff continued to investigate and uncover illegal and fraudulent conduct. Umphrey responded by transferring job duties and responsibilities from Plaintiff to Rick Rogers, Assistant to the President. Plaintiff repeatedly approached

Umphrey concerning the legality of certain conduct occurring at SSCC.

6. In the fall of 1998, Plaintiff requested that Umphrey accompany him to Montgomery so that they could report to Gainous the multitude of illegal and fraudulent conduct at SSCC. Umphrey did not accompany Plaintiff to the meeting.

7. In the subsequent meeting with Gainous on September 21, 1998, Plaintiff informed Gainous of the fraudulent conduct and other improprieties at SSCC in great detail. He outlined instances of academic fraud, scholarship fraud, credit hours fraud, and violations of court orders. He related to Gainous examples of harassing and retaliatory conduct by Umphrey against himself and other faculty members. Plaintiff requested that Gainous investigate the matter, and offered to provide the evidence which he had collected. Gainous told Plaintiff that he would investigate the matter and get back with Plaintiff.

8. Neither Gainous nor anyone in his office thereafter contact Plaintiff about the matters he had disclosed to Gainous. In November 1998, while the General Counsel and Vice-Chancellor of the Department was on SSCC's campus, Plaintiff approached them and inquired about a non-response from Gainous. The General Counsel told Plaintiff that Plaintiff should wait until he heard from Gainous.

9. As a result of Plaintiff's recurring complaints, Umphrey continued to systematically retaliate against Plaintiff and to remove important duties and responsibilities from Plaintiff.

10. Plaintiff wrote a letter to Gainous on December 31, 1998, again detailing the illegal, fraudulent, and unethical practices at SSCC, as well as Umphrey's continued harassment and retaliation against Plaintiff. Gainous never responded the letter, nor did he take any corrective action on the matters complained of by Plaintiff.

11. In the face of continuing retaliation, Plaintiff again wrote to Gainous in January 1999.

Again, he received no response from Gainous.

12. The Southern Association of Colleges and Schools ("SACS") visited SSCC for the purpose of an accreditation review in the Spring of 1999. In response to questions from the SACS team, Plaintiff disclosed the fraudulent and illegal conduct he has observed at SSCC.

13. The retaliation against Plaintiff continued after his statements to SACS.

14. In a letter dated June 4, 1999, Plaintiff was notified by Umphrey that his employment with SSCC was terminated, effective June 25, 1999. Plaintiff was notified of his right to a "due process" hearing.

15. The termination letter listed three charges against Plaintiff:

> *Charge 1:* Neglect of duty of honest and forthright dealings with the college and its administration, by
>
>> A) asserting a lack of funds and vehicle, and thus an inability to visit several Alabama colleges for program review in March 1999,
>> B) falsely accusing Umphrey with engaging in unacceptable practices as President,
>> C) making false reports to SACS, and
>> D) failing to make three program review visits of three Alabama colleges on March 1-5, 1999, as directed by Umphrey.
>
> *Charge 2:* Incompetence through the following acts and omissions:
>
>> A) seeking cash advances in violation of policies of the Department,
>> B) attending a mediation without authorization and there making statements damaging to SSCC,
>> C) seeking to breach student confidentiality, and
>> D) lack of knowledge of the procedure for amending college policy,
>
> *Charge 3:* Insubordination in the following particulars:
>
>> A) ignoring the written directive to refrain from contacting personnel in Gainous' office by contacting such persons on November 30, 1998, and December 30, 1998,
>> B) refusing to make three program reviews of other post secondary institutions in February 1999, as directed by Umphrey,
>> C) refusing to move the physical location of his office, as directed by Umphrey,

      D) failure and refusal to secure prior approval for leave,
      E) contacting SACS without prior approval of Umphrey.

  16. Plaintiff contested his termination at a due process hearing before an Employee Review Panel ("ERP") held in the offices of Umphrey's attorneys.

  17. The ERP consisted of Ken Simon, a former Alabama circuit judge, appointed by Plaintiff, Thomas P. Snow, a former Alabama district judge, appointed by Umphrey, and Wayne Guy, a businessman appointed through a process involving the Probate Judge of Tuscaloosa County.

  18. The ERP unanimously found that some of the allegations of Charge 1 (Neglect of Duty) are supported by the evidence, while others are not. It found that none of the allegations of Charge 2 (Incompetence) are supported by the evidence. Finally, the ERP as a whole found that one or more of the allegations of Charge 3 (Insubordination) are supported by the evidence; it could not agree unanimously as to which of the allegations are supported by the evidence.

  19. The ERP unanimously concluded that Plaintiff's termination was warranted and based upon the facts of the case.

  20. There is no evidence that the Defendants, or anyone else, were presenting, or causing to be presented, false or fraudulent claims to the United States for payments. Nor is there any evidence that the United States provides any portion of the money requested or reimburses SSCC for any portion of the monies for which a false claim was presented.

## B. CONCLUSIONS OF LAW

  1. Defendants SHELTON STATE COMMUNITY COLLEGE, ALABAMA DEPARTMENT OF POSTSECONDARY EDUCATION, FRED GAINOUS, in his official capacity, and TOM E. UMPHREY, in his official capacity, are entitled to absolute immunity

pursuant to the Eleventh Amendment to the United States Constitution. *See Quern v. Jordan*, 99 S. Ct. 1139 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937).

    2. Plaintiff's speech related to a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684 (1983); *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989); *Maggio v. Sipple,* 211 F.3d 1346 (11th Cir.2000).

    3. Plaintiff's interest in engaging in the speech outweighs Defendants' interest in prohibiting the speech in order to promote the efficiency of the public services they perform.

    4. Plaintiff's speech played a substantial role in Defendant Umphrey's decision to terminate him.

    5. Defendant Umphrey would not have made the same decision in the absence of Plaintiff's protected speech.

    6. Defendant Umphrey had mixed motives in terminating Plaintiff: retaliation, neglect of duty, and insubordination.

    7. Plaintiff has not directed the Court to, and the Court has not found, an Eleventh Circuit or Supreme Court case clearly establishing the right not to be terminated in a "concrete and factually defined context" substantially similar to those in this case. *Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

    8. Defendants FRED GAINOUS and TOM E. UMPHREY, in their individual capacities, are entitled to QUALIFIED IMMUNITY from Plaintiff's First Amendment claims under 42 U.S.C. § 1983. *Chesser v. Sparks,* 248 F.3d 1117, 1122-1125 (11th Cir.2001); *Stanley v. City of Dalton,* 219 F.3d 1280, 1294-1298 (11th Cir.2000); *Dennis v. School Board of Volusia County,*

*Florida,* 218 F.3d 1267 (11th Cir.2000).

    9. Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim brought under the False Claims Act. *See,* 31 U.S.C. § 3729(a), (c).

    By separate order, Summary Judgment will be granted in favor of Defendants.

    Done this \_\_31st\_\_ day of March, 2002.

_____  
Chief United States District Judge  
U.W. Clemon