IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DR. TED D. SPRING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 00-C-1316-W |
| ) | |
| **DR. TOM E. UMPHREY,** ) | |
| ) | |
| Defendant. ) | |

FILED 03 DEC 30 PM 3:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**
JAN - 5 2004

## QUALIFIED IMMUNITY MEMORANDUM OPINION ON REMAND

Plaintiff Dr. Ted S. Spring brought this action in 2000, alleging that he was subjected to retaliation and ultimately discharged in violation of his free speech rights under the First Amendment to the United States Constitution. The Defendant asserts that the case is barred by the doctrine of qualified immunity, which shields state actors from liability from constitutionally impermissible conduct if such conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818; 102 S.Ct. 2727 (1982). On remand from the Eleventh Circuit Court of Appeals, this opinion addresses that defense to liability.

I

Spring worked as Vice-President of Shelton State Community College in Tuscaloosa,

Alabama from 1992 until he was discharged in 1999 by the President of that institution, Dr. Tom E. Umphrey. In his capacity as Vice-President, Spring was in charge of the day-to-day operations of Shelton State.

Several years into his tenure, Spring discovered academic fraud (e.g., credits given for courses not taken), scholarship fraud (e.g., scholarships awarded to children of the President who were ineligible for such scholarships) and what he considered to be additional fraudulent, illegal, and unethical conduct by Umphrey and other Shelton State officials. Spring also became aware that Umphrey knew that Spring's name had been forged on three memoranda authorizing the questionable transfer of funds which were the subject of a federal grand jury investigation.

When Spring questioned Umphrey about the misconduct, Umphrey's response was to remove many of Spring's responsibilities and to transfer him from Shelton State's main campus to a phoneless office without air-conditioning on a satellite campus.

In 1995, Spring testified before the federal grand jury investigating Shelton State and Umphrey.

In October 1998, Spring wrote to Fred Gainous, the Chancellor of PostSecondary Education for the Alabama State Department of Education, and outlined his allegations of fraud and other irregularities by Umphrey and other Shelton State officials. He later met with Gainous and discussed these concerns.

In March 1999, the Southern Association of Colleges and Schools ("SAC") visited

Shelton State to conduct an on-site review for the re-accreditation of the college. It was a part of Vice-President Spring's responsibilities to meet with the SAC officials. However, to prevent Spring from meeting with the SAC team, Umphrey directed Spring to perform out-of-town duties while the SAC was visiting the campus. Nevertheless, Spring met with the SAC team and disclosed the perceived irregularities in the operation of the college.

A few months later, on Umphrey's recommendation, Spring was discharged. Umphrey has stipulated that Spring's communications with Gainous and the SAC team played a substantial role in his decision to discharge Spring.

II

Based on these largely undisputed facts, this Court in April 2002 found that 1) Spring's speech involved matters of public concern, 2) the interests of Spring, as a citizen, in commenting on these matters of public concern, outweigh the interests of Shelton State, as an employer, in promoting the efficiency of the public services it performs through it employees, and 3) Spring's speech played a substantial role in Umphrey's decision to discharge him.

But relying on *Chesser v. Sparks*, 248 F.3d 1117, 1122-1125 (11th Cir.2001); *Stanley v. City of Dalton*, 219 F.3d 1280, 1294-1298 (11th Cir.2000); and *Dennis v. School Board of Volusia County, Florida*, 218 F.3d 1267 (11th Cir.2000), the Court held that Spring's claims against Umphrey were barred by the doctrine of qualified immunity, since

there was no Supreme Court or Eleventh Circuit case clearly establishing the First Amendment right not to be terminated in a "concrete and factually defined context" substantially similar to those in this case. *Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

Spring's counsel wisely pursued an appeal of this Court's initial dismissal of the case.

While the appeal was pending, the United States Supreme Court decided that the Eleventh Circuit teachings in the qualified immunity context were erroneous. *See Hope v. Pelzer,* 536 U.S. 730, 122; S.Ct. 2508 (2002). The Court reminded the Circuit that for purposes of qualified immunity, even in novel circumstances, officials can still be on notice that their conduct violates established law, as notice does not require that the facts of prior cases be materially or fundamentally similar to the facts in the case at bar. Rather, the pivotal question is whether the state of the law at the time of the challenged action gave fair warning to the state actors that their conduct is unconstitutional. *Id.,* U.S. at 740, 741; S.Ct. at 2516. The Supreme Court found that the Eleventh Circuit's "rigid gloss on the qualified immunity standard, though supported by Circuit precedent, is not consistent with [Supreme Court] cases." *Id.,* U.S. at 739; S.Ct. at 2515.

In light of *Pelzer,* the Eleventh Circuit has reversed this Court's qualified immunity dismissal, and remanded the case for re-examination of the qualified immunity defense.

This court welcomes that opportunity.

4

III

The Court finds and concludes, without considerable difficulty, that when Umphrey made and implemented his decisions to retaliate against Spring in the 1996 - 1999 period and to discharge him in 1999 because of his exercise of his right to speak on matters of public concern, Umphrey was on fair notice that his conduct violated clearly established First Amendment law.

The earliest case which imparted such notice to the Defendant was the landmark case of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731 (1968), which stands for the general proposition that public employees may not be dismissed for speech on matters of public concern if their free speech rights as an employee outweigh the public employer's legitimate interests in promoting the efficiency of the services it provides.

*D'Andrea v. Adams,* 626 F.2d 469 (5th Cir.1980) gave notice to Umphrey that the First Amendment protects a university professor's statements to a legislative budget subcommittee concerning perceived improprieties in the use of the university's funds, even if the statements are inaccurate. Like Umphrey, the defendant in *D'Andrea* was the president of an Alabama state university.

*Kurtz v. Vickery,* 855 F.2d 723 (11th Cir.1988), another case involving an Alabama state university, gave notice to Umphrey that the First Amendment protects a university professor's criticisms of the university president and the university's expenditure of funds.

The case of *Martinez v. City of Opa-Locka, Florida,* 971 F.2d 708 (11th Cir.1992),

gave fair warning to Umphrey not only that the First Amendment protects a public employee from discharge in retaliation for testimony that the city's bid procedures had been violated by the City Manager; but it also warned him that the doctrine of qualified immunity does not shield such conduct. *Id.,* at 713.

All the other relevant authorities gave fair notice to Umphrey that the First Amendment protects Spring's utterances to the Chancellor of PostSecondary Education and the SAC. *See, Little v. City of North Miami,* 805 F.2d 962 (11th Cir. 1986); *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891 (1987); *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486-87 (11th Cir.1992); *Belyeu v. Coosa County Bd. of Ed.,* 998 F.2d 925 (11th Cir.1993); *Beckwith v. City of Daytona Beach, Florida,* 58 F.3d 1554, 1563 (11th Cir.1995) ("We hold that state employees retain a federal cause of action under the First Amendment when they allege that government employment decisions were taken in an attempt to chill expression protected by the First Amendment"); *Fikes v. City of Daphne,* 79 F.3d 1079, 1083 (11th Cir.1996) ("It is well established that a state may not discharge a public employee in retaliation for public speech." ).

## Conclusion

In light of the clearly established law on Spring's right of free speech in the circumstances of this case, Umphrey's defense of qualified immunity cannot prevail.

It is therefore DECLARED that the doctrine of qualified immunity does not shield Defendant's First Amendment violation in this case.

Done this 30th day of December, 2001.

_____
Chief United States District Judge
U.W. Clemon